UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DEREK A. CAPOZZI,<br>      Petitioner,<br>      v.<br><br>UNITED STATES OF AMERICA | )<br>)<br>)<br>)  CIVIL ACTION NO. 05-10171-PBS<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

January 12, 2007

Saris, U.S.D.J.

    <u>Pro se</u> Habeas Petitioner Derek A. Capozzi brings this action claiming that he received ineffective assistance of counsel and that his sentence enhancement violated the Sixth Amendment. He seeks an evidentiary hearing. The petition is **DENIED**.

**I. BACKGROUND**

    In 2000, Petitioner was convicted by a jury of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), attempted extortion affecting interstate commerce under the "Hobbs Act," 18 U.S.C. § 1951(a), and use of a firearm during the attempted extortion under 18 U.S.C. § 924(c).

    Evidence admitted at trial would support the following facts. On February 18, 1998, Capozzi and his friend, Jason Stone went to Gardner Park Auto Sales ("Gardner Park") to obtain a refund for a truck that Petitioner had purchased which he believed was a 'lemon.' Both men were armed, Petitioner with a

revolver and Stone with a knife that had a handle meant to resemble a gun.  Petitioner asked Michael McGrath, the owner of Gardner Park, for a refund and when McGrath refused, he threatened him with the gun.  At that point, two brothers, Carlo and John Fahkri walked in and saw the altercation and tried to diffuse it.  A phone then rang and McGrath left to answer it and subsequently called the police, who arrived soon thereafter and arrested Petitioner.

Petitioner appealed his conviction to the First Circuit Court of Appeals, which affirmed on October 6, 2003.  United States v. Capozzi, 347 F.3d 327, 328 (1st Cir. 2003).  The Supreme Court denied the petition for certiorari on January 26, 2004.

On January 25, 2005, Capozzi filed a motion under 28 U.S.C. § 2255 asserting ineffective assistance of counsel.  Capozzi filed an amended motion on March 25, 2005, challenging counsel's failure to brief an unconstitutional enhancement of sentence claim.  Petitioner also argues that the enhancement of his sentence under 18 U.S.C. 924(e)(1) ("Armed Career Criminal Act" or "ACCA") violated his Sixth Amendment right to a jury trial.

## II. ANALYSIS

### A.  Original Habeas Motion Claims

The Supreme Court created a two-pronged test that must be met to show ineffective assistance of counsel.  Strickland v.

Washington, 466 U.S. 668, 687 (1984).  First, a petitioner must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686.  Review of counsel should be "highly deferential," and to meet this performance prong threshold, a petitioner must show that "given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'"  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).

The second prong requires "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.

1. Decision Not To Testify

Petitioner argues that he was unlawfully "intimidated, or coerced, or influenced" by his attorney, Peter B. Krupp ("Krupp"), not to testify at his trial.  Whether a criminal defendant decides to testify is "primarily a matter of trial strategy to be decided between the defendant and his attorney." Passos-Paternina v. United States, 12 F. Supp. 2d 231, 237 (D.P.R. 1988), aff'd 201 F.3d 428 (1st Cir. 1999) (citing United States v. Systems Architects, Inc., 757 F.2d 373, 375 (1st Cir.

1985).  To exercise his right to testify, "a criminal defendant must claim [the right] by attempting to take the stand or it is waived."  Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987) (quoting United States v. Ives, 504 F.2d 935, 939-40 (9th Cir. 1974) (internal quotes omitted).

At a sidebar conference during his jury trial, Petitioner clearly stated both that he did not intend to testify and that his decision was a strategic one.  (Trial Tr. 91-92, November 12, 1999.)  In response to the Court's question about whether he was going to take the stand, Petitioner answered "I am not going to."  (Id.)  The Court questioned him further, stating it wished to "make sure [Petitioner] was in agreement with that strategy" and Petitioner responded, "Yeah, I'm in agreement."  (Id.)

Petitioner, however, argues that his statements regarding this trial strategy were coerced.  A petitioner may rebut the presumption that his failure to assert his right to testify at trial should constitute a waiver of that right, but such a challenge must provide reasons for "concluding that any such specific factual allegations would be credible."  Siciliano, 834 F.2d at 31.  A "barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him."  Passos-Paternina, 12 F. Supp. 2d at 239 (citing Siciliano, 834 F.2d 29, 31).  Petitioner fails to provide any evidence beyond his own affidavit for his claim, made for the

4

first time in the five years since his trial, that his attorney did not permit him to testify.  Absent other evidence beyond his own allegations, Petitioner's claim is nothing more than a "barebones assertion" which is "insufficient to require a hearing or other action."  Passos-Paternina, 12 F. Supp. 2d at 239 (citing Siciliano, 834 F.2d 29, 31).

Furthermore, Petitioner's assertion that his counsel did not allow him to testify is contradicted in several instances by the record.  For example, Petitioner was quite forceful in insisting repeatedly that Krupp put on the particular defense that Petitioner preferred, even though he was warned by both Krupp and the Court that it could result in unfairly prejudicing the jury against him.  (See, e.g., Ex-Parte Hr'g Tr. 7, 12, 14, November 1, 1999.)  It is similarly not credible that Krupp would have coerced Petitioner not to testify after a) reading to the Court Massachusetts Rule of Professional Conduct (Rule 1.2), which requires an attorney to "abide by the client's decision as to . . . whether the client will testify;" and b) stating to the Court that Petitioner, with his consent, intended to testify in his upcoming bank robbery trial.  (Id. at p. 29; Trial Tr. 10, November 16, 1999.)  Petitioner's claim that his counsel coerced him is further undermined by his repeated praise of Krupp's representation, both before the trial and five months afterwards, at sentencing.  (See Ex-parte Hr'g Tr. 14, November 1, 1999 ("[H]e's a great lawyer. . . .  He has done nothing but good for

me so far."); Sentencing Tr. 65, April 6, 2000 ("I'd also like to thank Mr. Krupp.").) Petitioner's allegation is thus not credible.

   2. <u>Investigation by Counsel</u>

   Petitioner argues that his trial attorney failed to obtain documents that would have shown that his alleged attempted extortion had no actual or de minimis effect on interstate commerce. Petitioner asserts that his counsel should have obtained records of prior Hobbs Act prosecutions to show that Petitioner was prosecuted under an "absurd" theory, and that his counsel should have obtained McGrath's business records to show there was no de minimis effect on interstate commerce. Petitioner argues this would have shown that, based on McGrath's buying pattern, the absence of $4,000 would have had no effect on Gardner Park's operations and likely would have been recovered by resale of the vehicle. (Pet. Mot. to Vacate 9-12.)

   Under the Hobbs Act, the government's burden in proving a de minimis effect on interstate commerce is not onerous. <u>United States v. DiGregorio</u>, 605 F.2d 1184, 1191 (1st Cir. 1979). Even a temporary financial loss is considered to be de minimis. <u>See United States v. Stillo</u>, 57 F.3d 553, 559 (7th Cir. 1995) ("[T]he temporary depletion of . . . assets until repayment and the risk of non-payment would be sufficient to satisfy the de minimis interstate commerce requirement."); <u>see also</u> <u>United States v. Lewis</u>, 797 F.2d 358, 365 (7th Cir. 1986) ("Even a temporary loss

of the use of money constitutes a deprivation of property under [the Hobbs Act]."). On Petitioner's direct appeal the First Circuit noted that "[o]ne common method for the government to establish the required 'de minimus effect' on interstate commerce is to show that the defendant's activity minimally depletes the assets of an entity doing business in interstate commerce." United States v. Capozzi, 347 F.3d 327, 337 (1st Cir. 2003). The Hobbs Act even reaches effects on interstate commerce which are "merely potential or subtle." United States v. Hathaway, 534 F.2d 386, 396 (1st Cir. 1976). Here, the alleged undiscovered evidence would not negate the fact that Petitioner attempted to deplete Gardner Park's assets by $4,000. This is sufficient to satisfy the minimal depletion of assets, and thus Petitioner's argument fails for a lack of prejudice under Strickland.

   3.  Use of Additional Witnesses

Petitioner argues that Krupp failed to investigate and question individuals that could have impeached the credibility of key witnesses against the Petitioner, including McGrath and Stone. Regardless of whether this was a reasonable strategy under Strickland, Petitioner has not shown that the testimony of additional witnesses would have changed the outcome of the trial. Both Stone and McGrath were extensively cross-examined and there were two additional eyewitnesses, the Fahkri brothers, who corroborated their account of Petitioner's actions. (Trial Tr.

47, 103, November 3, 1999.)  This claim thus fails to satisfy the prejudice prong of <u>Strickland</u>.

    4.  <u>Failure to Object to Jury Instructions</u>

Petitioner also argues that Krupp failed to object to prejudicial jury instructions.  He asserts that the Court erred in telling the jury that the government only needed to show that "if [Petitioner] had taken Mr. McGrath's funds, there is a realistic probability of an adverse effect on Mr. McGrath's ability to engage in interstate commerce, in any way or degree, even if that effect is minimal."  (Pet. Mot. to Vacate 20.) Petitioner argues the instruction's inclusion of "probability" amounted to a lowering of the standard of proof from beyond a reasonable doubt to a mere preponderance of the evidence.  This argument is not persuasive, however, because the First Circuit has affirmed this language on several occasions.  <u>See</u> <u>Capozzi</u>, 347 F.3d at 335 ("[T]he government must show only that the extortionate conduct created 'a realistic probability of a de minimis effect on interstate commerce.'") (quoting <u>United States v. Butt</u>, 955 F.2d 77, 80 n.2 (1st Cir. 1992); <u>United States v. Rodriquez-Casino</u>, slip op. No. 04-1037, (1st Cir. October 4, 2005) at 4 (citing Capozzi).

Petitioner also argues that his various counsel were ineffective in not objecting to the Court's misleading jury instructions that the government didn't have to prove "that the

firearm or ammunition moved across state lines in connection with the charge in the indictment" or "that Mr. Capozzi knew that the firearm had crossed state lines." (Pet. Mot. to Vacate 22 (quoting Trial Tr. 107, November 15, 1999).) This was a prejudicial error, Petitioner contends, because it eased the government's burden since it no longer had to prove that Petitioner "knowingly" affected interstate commerce. While the First Circuit appears not to have dealt with this question, all of the other circuits that have addressed the issue agree that the government is not required to show a defendant knew his gun had crossed interstate lines to convict under 18 U.S.C.A. § 922(g).[1] Because the jury instructions were appropriate, Krupp's

---

[1] See, e.g., United States v. Sanders, 35 F.3d 61 (2nd Cir. 1994), cert. denied 513 U.S. 994 ("Government showing that ammunition possessed by defendant had been manufactured elsewhere and passed through interstate commerce before defendant possessed it is sufficient to show nexus with interstate commerce."); United States v. Williams, 893 F.Supp. 617 (S.D. W. Va. 1995), affirmed 107 F.3d 869 (4th Cir. 1997), appeal from denial of post-conviction relief dismissed 162 F.3d 1158 (minimal nexus between firearm and interstate commerce may be satisfied by showing that firearm traveled, at some point in its history, in interstate or foreign commerce; United States v. Lopez did not add requirement of connection between defendant's possession of firearm and interstate commerce); United States v. Singleton, 902 F.2d 471 (6th Cir, 1990), cert. denied 498 U.S. 872, denial of habeas corpus vacated on other grounds, 36 F.3d 1098 (sufficient nexus with interstate commerce established by mere fact that firearm which defendant was accused of possessing was manufactured in different state); United States v. McCarty, 862 F.2d 143, 145 (7th Cir. 1988) ("To prove the required nexus between a defendant's possession and interstate commerce, the government only has to show that the firearm traveled in interstate commerce at some time."); United States v. Williams, 403 F.3d 1188, 1195 (10th Cir. 2005), cert. denied 126 S.Ct. 178 ("Proof that the gun was manufactured in California and possessed by [defendant] in Kansas is sufficient to establish the nexus with interstate commerce.").

failure to object to them cannot be considered deficient, nor is there any way that it could have adversely impacted the outcome of the trial.

In his final jury instruction-related claim, Petitioner argues that Krupp erred in not objecting when the Court presented Count Two, which dealt with Stone's possession of the gun, to the jury. Petitioner argues that this was prejudicial to his case because the identification of and possession by him of the gun was "the most highly disputed fact and central issue in the case." (Pet. Am. Mot. 16-17.) This contention is without merit because there was substantial evidence that confirmed Petitioner's use of the gun. McGrath testified that he observed the gun when Petitioner threatened him with it inches from his face, and was able to accurately describe it at trial. Stone confirmed that he recognized the weapon used to threaten McGrath as the gun he bought for Petitioner. Finally the Fakhri brothers both testified that they saw Petitioner threaten McGrath with a similar looking gun.

5. <u>Miscellaneous Issues</u>

Petitioner alleges that his counsel were deficient for not raising the issue of what he considers the vindictiveness of the prosecution in seeking a much higher sentence for Petitioner than for Stone, who Petitioner argues should have received a similar

sentence.  Petitioner is correct when he asserts that a prosecutor can not vindictively punish a defendant for exercising his rights.  See Bordenkircher v. Hayes 434 U.S. 357, 668 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.").  The central holding of Bordenkircher, however, is that it is part of the "'give-and-take' of plea bargaining" for a prosecutor to seek a conviction that would result in a higher sentence than a defendant would otherwise have received had he accepted a plea bargain and "there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."  Id.  It is therefore meaningless to compare Petitioner's sentence, which was the result of a jury trial, to that of Stone who accepted a plea bargain.  His counsel likely recognized this and therefore decided that there was no issue to raise.  This falls far short of the Strickland standard of unreasonableness.

Petitioner also alleges that his first lawyer, Matthew Kamholtz ("Kamholtz") acted unethically during negotiations with the government over a possible plea bargain.  Petitioner, however, has provided no evidence that Kamholtz acted improperly nor that his behavior was unreasonable under Strickland.

    **B.**    **Amended Motion**

In his amended motion, Petitioner makes three claims. First, Petitioner argues that some of his prior convictions should not have counted as requisite violent felonies under the ACCA because they were non-generic burglaries. Second, Petitioner asserts the Court's determination that his prior convictions qualified him as an Armed Career Criminal violated his Sixth Amendment right to a jury trial because it was determined by a judge using a preponderance of the evidence standard. Finally, Petitioner asserts that he was denied effective assistance of counsel because his attorneys did not raise either of the first two issues.

1. Procedural Default

"[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003). The Supreme Court created an important exception to this rule, however, holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Id.; see also United States v. Rodriguez, 457 F.3d 109, 117 (1st Cir. 2006) ("Ineffective assistance claims should ordinarily be raised in a petition under § 2255 . . . because the record is not [otherwise] sufficiently developed to fully evaluate them.").

None of the claims raised in the Amended Motion were raised on direct appeal. While the ineffective assistance claims are not procedurally-barred, Petitioner must show cause and prejudice for not bringing the first two claims on direct appeal.

Petitioner first argues that some of his prior convictions should not have counted as requisite violent felonies under the ACCA because they were non-generic burglaries. (Pet. Am. Mot. 4.) The ACCA "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle." Shepard v. United States, 544 U.S. 13, _ ; 125 S. Ct. 1254, 1257 (2005). Petitioner's argument is that the Massachusetts burglary statutes define burglary to include not only breaking and entering a building with intent to commit a felony, which would qualify as an ACCA predicate, but also breaking and entering a "ship, vessel, or vehicle." See Mass. Gen. Laws Ann. ch. 266 §16, §18. Petitioner argues that because the statute includes both violent and non-violent crimes for purposes of the ACCA, the government has not shown that he actually pled to breaking and entering a building as opposed to breaking and entering a "building, ship, vessel, or vehicle." (Pet. Amended Mot. at 4.) The standard, however, is that "the court only had to decide if the government had presented sufficiently reliable evidence to permit it to conclude, by a preponderance of the evidence, that [Petitioner's] plea . . . constituted an admission to breaking and entering a dwelling,

13

instead of a "ship, vessel or vehicle." United States v. Delgado, 288 F.3d 49, 55 (1st Cir. 2002).

In the instant case, the Presentence Report ("PSR") explicitly indicated that at least four of Petitioner's prior convictions involved buildings rather than ships, vessels, or vehicles: "the Peabody Glen Nursing Home" (PSR § 50), "an apartment located at 129 Lowell St., Peabody" (PSR § 53), "the Floor Studio property in Salem" (PSR § 54), and "a residence in Marblehead" (PSR § 56). Those prior convictions, combined with two others he is not contesting (breaking and entering "the Limited Store" (PSR § 51a) and assaulting a police officer with a dangerous weapon (PSR § 57)), are more than sufficient to qualify him as a Armed Career Criminal under 18 U.S.C. § 924(e), which requires only three prior violent felony convictions. This is the case even when two additional convictions for breaking and entering a "property" are disregarded because they are too vague and could conceivably include a ship, vessel, or vehicle.

In light of his extensive criminal record, there are more than enough examples of prior violent felonies to justify the court's finding that he should have been sentenced as an Armed Career Criminal under the ACCA. Regardless of whether he had cause for not bringing this claim on direct review, Petitioner cannot show that he was prejudiced by the failure and thus the claim is barred.

Petitioner's second claim is that the Court's determination, by a preponderance of the evidence, that his prior convictions qualified him as an Armed Career Criminal violated his Sixth Amendment right to a jury trial.  To support this argument, Petitioner cites dicta from several cases to make a creative argument that there is a majority on the current Supreme Court that would overrule Almendarez-Torres v. United States, 523 U.S. 224 (1998) which held that prior offenses need not be put before a jury.  While Petitioner may be correct, this argument fails because until the Supreme Court actually takes that vote, Almendarez-Torres remains good law.  The First Circuit has been clear that previous criminal convictions need not be found beyond a reasonable doubt by a jury.  See United States v. Work, 409 F.3d 484, 491 (1st Cir. 2005) ("In the roiled wake of Booker, it remains the law that previous criminal convictions are not 'facts' that must be found by a jury and proven beyond a reasonable doubt."); United States v. Thurston, 456 F.3d 211, 216 n.4 (1st Cir. 2006) ("[Defendant argues] that Booker raises the standard of proof for imposing guidelines enhancements from a preponderance of the evidence to beyond a reasonable doubt.  We have rejected this argument.")  Therefore, Petitioner has suffered no prejudice and the Sixth Amendment claim is therefore also procedurally barred.

Given the lack of merit in these two claims, Petitioner's argument that counsel were ineffective for failing brief the two

issues necessarily fails under the prejudice prong of Strickland. Petitioner cannot show that the alleged failure of his counsel could have affected the outcome of his case.

   2.   Timeliness

Two of the claims in Petitioner's amended motion are further time barred. Habeas motions must be filed within a one-year statute of limitations, beginning from "the date on which the judgment of conviction becomes final." Mayle v. Felix, 545 U.S. 644, __;  125 S.Ct. 2562, 2569 (2005). "[A] conviction becomes final - and the one-year period starts to run - when a petition for certiorari is denied." In re Smith, 436 F.3d 9, 10 (1st Cir. 2006). Petitioner's conviction became final with the Supreme Court's denial of his petition for certiorari on January 26, 2004. The Amended Motion was not filed until March 18, 2005. Therefore, the amended claims are time-barred unless they relate back to the original pleading.

An amended motion relates back to the original pleading when they both "ar[i]se out of the [same] conduct, transaction, or occurrence." Mayle, 125 S.Ct. at 2569 (quoting Fed. R. Civ. P. 15(c)(2)); United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). "Amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended." Ciampi, 419 F.3d at 25; (citing Mayle, 125 S.Ct at 1271).

16

Petitioner's first claim, that his prior convictions for allegedly non-generic burglary were impermissible ACCA predicates, implicates a set of facts – the details of his prior record – that was never raised in his original § 2255 motion. It is thus time-barred. Petitioner's ineffective assistance claim that his counsel failed to brief the ACCA predicate issue is similarly barred because it, too, implicates that same set of facts. See Ciampi, 419 F.3d at 24 ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.").

Petitioner's last claim, however, does arise out of the same transaction or occurrence. Petitioner argues in his amended motion that his Sixth Amendment right to a jury trial was violated by the finding of his prior convictions by a judge instead of a jury. Similarly, in the original pleading Petitioner challenged his excessive sentence noting that he "was not indicted, tried before a jury or convicted by a jury . . . with respect to the foregoing criminal offenses used by [the court] to go to the top of the guideline range and then make an upward departure . . . ." (Pet. Mot. to Vacate 25.) The amended Sixth Amendment claim and the related ineffective assistance claim thus relate back to his original motion and are not time-

17

barred.  As explained above, however, the Sixth Amendment claim remains procedurally barred and the ineffective assistance claim fails under the prejudice prong of <u>Strickland</u>.

## **ORDER**

Petitioner's § 2255 motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.  The Court orders that the habeas petition be dismissed.

**S/PATTI B. SARIS**
United States District Judge
